Raleigh JOHNS, Petitioner,

v.

W. Frank SMYTH, Jr., Superintendent, Virginia State Penitentiary, Respondent.

Misc. No. 2454.

United States District Court
E. D. Virginia,
Norfolk Division.

Sept. 29, 1959.

Joseph E. Baker, Norfolk, Va., for petitioner.

A. S. Harrison, Jr., Atty. Gen., Thomas M. Miller and Reno S. Harp, III, Asst. Attys. Gen., for respondent.

WALTER E. HOFFMAN, District Judge.

Petitioner is a state prisoner serving a life sentence for the murder of one Melvin Childress in accordance with a final judgment of the Circuit Court of the City of Richmond, Virginia, entered on December 17, 1942. Petitioner and Childress were inmates at the State Penitentiary when the killing took place on October 7, 1942. While there is no transcript of the evidence available from the state court, as no court reporter was present, the petitioner's signed statement given on the day following the crime is to the effect that he killed Childress with a knife in the cell of the latter, when Childress took hold of the petitioner and suggested an unnatural sexual act. An investigation by prison authorities points to other motives for the killing but, for the purpose of this proceeding by way of habeas corpus, we are not particularly concerned with the details of the crime.

On some date following the return of an indictment on October 14, 1942, the state court assigned counsel to represent petitioner. The record reveals that the court-appointed attorney had been practicing for a period of approximately fifteen years at the time of petitioner's trial. There is nothing in this proceeding which would reflect that the trial judge or prosecutor were negligent in the performance of their duties with respect to the appointment of court-assigned counsel and the ensuing trial.

While the Attorney General now states that petitioner has not exhausted his state court remedies before turning to the federal court, this is apparently in conflict with a prior concession stated in the brief that such remedies had been exhausted. The record discloses that petitioner has, on two prior occasions, instituted habeas corpus proceedings in the state court. The first case alleged the incompetency of assigned counsel and was dismissed without a plenary hearing. A petition for a writ of error to the Supreme Court of Appeals in Virginia was filed too late, but the latter court nevertheless treated the request as an original petition and denied same. Apparently certiorari was not requested in the

United States Supreme Court. On April 19, 1955, petitioner made application to the Hustings Court of the City of Richmond, Part II, which court declined to consider the question of incompetency of counsel because of the prior adjudication of this point, but granted a plenary hearing on an entirely different issue. On June 30, 1955, the state court denied the petition. Subsequent appeals to the Supreme Court of Appeals of Virginia and the United States Supreme Court were to no avail; a petition for a writ of certiorari having been denied on February 25, 1957. The present proceeding was instituted in this court on May 29, 1957, but has been delayed due to petitioner's alleged inability to secure what he considered to be pertinent evidence.

■ At no time during the state court proceedings did petitioner waive his right to allege the incompetency of his court-appointed counsel. True, he did not appeal the initial adverse ruling on habeas corpus to the United States Supreme Court, but he properly excepted to the action of the state court in declining to consider this point in his later petition which thereafter followed the course of exhaustion of state remedies. Indeed, the Assistant Attorney General candidly stated that if the matter reverted to further proceedings in the state court, the Attorney General would take the position that the point had been previously adjudicated. Under such circumstances petitioner has exhausted his state court remedies and has not been accorded a plenary hearing on the sole question before this court.

While the petition alleges several points for consideration, it is only necessary to determine whether petitioner had a fair trial by reason of the actions of court-appointed counsel. All too often the incompetency of counsel is assigned in vague allegations which are invariably without merit. It is on the basis of the testimony now given by court-assigned counsel that this court has arrived at the conclusion that petitioner's constitutiona¹ rights have been invaded.

■■ One of the cardinal principles confronting every attorney in the representation of a client is the requirement of complete loyalty and service in good faith to the best of his ability. In a criminal case the client is entitled to a fair trial, but not a perfect one. These are fundamental requirements of due process under the Fourteenth Amendment. United States ex rel. Weber v. Ragen, 7 Cir., 176 F.2d 579, 586. The same principles are applicable in Sixth Amendment cases (not pertinent herein) and suggest that an attorney should have no conflict of interest and that he must devote his full and faithful efforts toward the defense of his client. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Von Moltke v. Gillies, 332 U. S. 708, 725, 726, 68 S.Ct. 316, 92 L.Ed. 309.

With this in mind, let us examine the facts to determine (1) whether the representation afforded petitioner at his murder trial was so totally lacking that it cannot be said that he had a fair trial in the usual sense of the word, and (2) whether the court-appointed attorney was so prejudiced and convinced of his client's guilt of *first degree murder* that he was unable to, and did not, give his client the "undivided allegiance and faithful, devoted service" which the Supreme Court has held to be the right of the accused under the Constitution, and (3) whether the attorney's interest in his client was so diverted by his personal beliefs that there existed a conflict in interest between his duty to his client and his conscience.

The importance of the attorney's undivided allegiance and faithful service to one accused of crime, irrespective of the attorney's personal opinion as to the guilt of his client, lies in Canon 5 of the American Bar Association Canon of Ethics, in effect during 1942, where it is said:

> "It is the right of the lawyer to undertake the defense of a person accused of crime, regardless of his personal opinion as to the guilt of the accused; otherwise innocent persons, victims only of suspicious circumstances, might be denied proper defense. Having undertaken such defense, the lawyer is bound, by all fair and honorable means, to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law."

■ The difficulty lies, of course, in ascertaining whether the attorney has been guilty of an error of judgment, such as an election with respect to trial tactics, or has otherwise been actuated by his conscience or belief that his client should be convicted in any event. All too frequently courts are called upon to review actions of defense counsel which are, at the most, errors of judgment, not properly reviewable on habeas corpus unless the trial is a farce and a mockery of justice which requires the court to intervene. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667. But when defense counsel, in a truly adverse proceeding, admits that his conscience would not permit him to adopt certain customary trial procedures, this extends beyond the realm of judgment and strongly suggests an invasion of constitutional rights.

Little need be said of the trial. The accused did not testify. No proposed instructions were submitted to the trial judge in behalf of the defendant, although under the law of Virginia it was possible for the defendant to have been convicted of involuntary manslaughter and received a sentence of only five years. The defense attorney agreed with the prosecutor that the case would be submitted to the jury without argument of counsel. The instructions given by the court were generally acceptable in covering the categories of first and second degree murder, but failed to mention the possibility of a manslaughter verdict.

Standing alone these complaints would have no merit as they may properly be considered as trial tactics. However, when we look at the motivating force which prompted these decisions of trial counsel, it is apparent that "tactics" gave way to "conscience". In explanation of

the agreement not to argue the case before the jury, the court-appointed attorney said:

"I think an argument to the jury would have made me appear ridiculous in the light of evidence that was offered.

\* \* \* \* \* \*

"I had enough confidence in the judgment of the jury to know that they could have drawn an inference, and I would have been a hypocrite and falsifier if I had gone before the jury and argued in the light of what Johns told me that that statement was accurate.

\* \* \* \* \* \*

"Well, sir, I did not and I wouldn't be dishonest enough to do it in the light of Mr. Johns' statement to me. You can say what the law is and what the record discloses, but if I asked a client, an accused on defense, to explain some such statement as this and he gives me the explanation that Johns gave me, I consider it dishonest. You can talk about legal duty to client all you wish, but I consider it dishonest for me to get up before a jury and try to argue that the statement that came out from the Commonwealth was true when Johns had told me that it wasn't. The explanation that he gave me was very vague."

Immediately thereafter, the following occurred:

"Q. That you could not conscientiously argue to the jury that he should be acquitted? A. I definitely could not.

"Q. Regardless of what the law is or what your duty to a client is? A. You can talk about law and you can talk about my duty to clients, I felt it was my—that I couldn't conscientiously stand up there and argue that point in the light of what Johns had told me."

The attorney was then asked whether he ever considered requesting permission to withdraw from the case. He replied in the negative.

No attorney should "frame" a factual defense in any case, civil or criminal, and it is not intimated by this opinion that the attorney should plant the seeds of falsehood in the mind of his client. In the instant case, however, the evidence adduced by the prosecution suggested some provocation for the act through the summary of the statement given by the defendant on the day following the killing. When the defendant was interviewed by his court-appointed attorney, the attorney stated that he had reason to doubt the accuracy of the defendant's statement. It was at this time that the attorney's conscience actuated his future conduct which continued throughout the trial. If this was the evidence presented by the prosecution, the defendant was entitled to the faithful and devoted services of his attorney uninhibited by the dictating conscience. The defendant could not be compelled to testify against himself, and if the prosecution saw fit to use the defendant's statement in aid of the prosecution, the attorney was duty bound to exert his best efforts in aid of his client. The failure to argue the case before the jury, while ordinarily only a trial tactic not subject to review, manifestly enters the field of incompetency when the reason assigned is the attorney's conscience. It is as improper as though the attorney had told the jury that his client had uttered a falsehood in making the statement. The right to an attorney embraces effective representation throughout all stages of the trial, and where the representation is of such low caliber as to amount to no representation, the guarantee of due process has been violated. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; People v. DeSimone, 9 Ill.2d 522, 138 N.E.2d 556.

The entire trial in the state court had the earmarks of an *ex parte* proceeding. If petitioner had been without the services of an attorney, but had remained mute, it is unlikely that he would have

been worse off. The state argues that the defendant may have received a death sentence. Admitting this to be true, it affords no excuse for lack of effective representation.

■ Holding that the petitioner was not accorded a "fair trial" in the true sense of the word, because of the motivating forces which dictated the actions and decisions of his court-appointed counsel, we turn to the legal problem which has given this court grave concern. It is a general rule of law that a federal court cannot order the release of a state prisoner, grounded upon the lack of effective counsel in the state court proceeding, unless the incompetence and ineffectiveness of the attorney is so obvious that it becomes the duty of the trial judge or prosecutor (both state officers) to intervene and protect the rights of the accused. United States ex rel. Darcy v. Handy, 3 Cir., 203 F.2d 407, certiorari denied sub nom., Maroney v. United States ex rel. Darcy, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375; United States ex rel. Thompson v. Dye, D.C.W.D.Pa., 103 F.Supp. 776, affirmed 3 Cir., 203 F.2d 429, certiorari denied sub nom. Thompson v. Dye, 345 U.S. 960, 73 S.Ct. 946, 97 L. Ed. 1380; Hudspeth v. McDonald, 10 Cir., 120 F.2d 962, 968. With this general statement, this court is in accord.

As indicated, there is nothing apparent in this case which would require the trial judge or prosecutor to intervene. But the state of facts here presented indicates that the general rule should not be considered as inflexible. In Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L. Ed. 135, the Supreme Court indicated that, on the question of the mental condition of the accused at the time of trial, the presence or absence of affirmative misconduct on the part of the state at the trial was irrelevant. Cf. Snider v. Smyth, 4 Cir., 263 F.2d 372; Betts v. Brady, 316 U.S. 455, 473, 62 S.Ct. 1252, 86 L.Ed. 1595.

■ If it be necessary to engraft an exception on the general rule, it would appear that one is appropriate here, for indeed it would be a dark day in the history of our judicial system if a conviction is permitted to stand where an attorney, furnished to an indigent defendant, candidly admits that his conscience prevented him from effectively representing his client according to the customary standards prescribed by attorneys and the courts.

Counsel for petitioner will prepare an appropriate order granting the writ of habeas corpus and remanding petitioner to the proper authorities of the State of Virginia for further proceedings on the charge of murder. Should the respondent elect to appeal from the order of this court, the effectiveness of the order shall be stayed pending appeal, provided that the appeal is promptly noted and perfected.