Walter LA FAVER, Petitioner,

v.

John W. TURNER, Warden of Utah State Prison, Defendant.

(In the Matter of the Application of Walter La Faver for a Writ of Habeas Corpus)

No. C 63–64.

United States District Court
D. Utah,
Central Division.

July 16, 1964.

Joseph C. Fratto, Salt Lake City, Utah, for plaintiff.

A. Pratt Kesler, Atty. Gen. of the State of Utah, and Ronald N. Boyce, Chief Asst. Atty. Gen. of the State of Utah, for defendant.

CHRISTENSEN, District Judge.

Petitioner, a State prisoner, has applied to this court for a writ of habeas corpus, asserting that he was induced by duress or coercion to enter a plea of guilty in a State criminal proceeding, and that he was unconstitutionally denied counsel to effectuate an appeal from an adverse judgment in a State habeas corpus proceeding to test the legality of his detention pursuant to such plea of guilty.

There is apparent conflict between the view attributed to the Supreme Court of the State of Utah in this case as well as the rationale of a prior State decision [1] and recent decisions of the Supreme Court of the United States [2] which point up the right of an indigent to effect a meaningful appeal either through the assistance of counsel or by commensurate relief. The point was urged in an earlier case before this court but not reached because of the circumstances there present.[3] Now it

1. Burleigh v. Turner, 15 Utah 2d 118, 388 P.2d 412 (1964).

2. Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951); Annot. Habeas Corpus on ground of deprivation of right to appeal, 19 A.L.R.2d 789 (1951); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961).

3. In an unpublished opinion in C 22–64, United States District Court for the District of Utah, Burleigh v. Turner, Warden, it was stated:
"On the narrower issue of whether in view of the Supreme Court's quoted opinion [Burleigh v. Turner, 388 Pac.2d 412 (1964) supra] the petitioner has exhausted his state remedies because of his failure to raise the question of failure of his counsel to perfect an appeal from Judge Jeppson's judgment, I am of the opinion technically that the answers must be in the negative, since the way is still open by means of a new State habeas corpus proceeding to raise any lack of due process in this respect in the State court, a matter which the Supreme Court has held has not been yet appropriately presented. However, so that purposeless proceedings here may not be needlessly encouraged, it seems appropriate to express the view that should proceedings in this respect be exhausted in the State court there would still be no substantial Federal question for determination. Being of the view that the pleas as shown in the State proceedings were voluntary by Federal standards, it could hardly be thought that failure to appeal from a State record so showing, would involve a deprivation of due process. This is aside from the absence of any sufficient showing before me that appointed counsel was actually derelict, since all that is shown is the appointment of counsel and the fact that an appeal was not taken. I, of course, express no opinion whether it would involve prejudice to any recognizable right under State law or whether the State courts should or could afford relief from any such failure. Nor do I reach the abstract problem whether under any circumstance, failure of appointed counsel

is squarely presented and essential for decision.

A complaint was filed in the City Court of Salt Lake City, Utah, on November 7, 1962, charging the petitioner with the crimes of robbery and grand larceny. Later an information was regularly filed. On November 26, 1962, petitioner appeared for arraignment with his appointed counsel and pleaded guilty to the charge of robbery, the grand larceny charge being dismissed upon the motion of the District Attorney. On December 10, 1962, the State court sentenced petitioner to a term in the Utah State Prison, where he is presently serving his sentence.

On July 6, 1963, in the Third Judicial District Court in and for Salt Lake County, petitioner filed his application for a writ of habeas corpus, asserting, among other things, that his plea had been coerced through threats of great bodily harm.[4] The writ was heard on September 9, 1963, and denied on September 24, 1963. On October 7, 1963, a Notice of Appeal to the Supreme Court was filed by appointed counsel who represented petitioner in the lower court. Before anything further could be done in the prosecution of this appeal this attorney was appointed to a public office which disqualified him from continuing as petitioner's counsel, and he withdrew with the approval of the State Supreme Court. The appeal was dismissed by the Supreme Court without any consideration of its merits on or about April 1, 1964.

The reason for the dismissal was stated in a letter from L. M. Cummings, Clerk of the Supreme Court of Utah, as failure of the petitioner to file his brief on appeal by April 1, 1964.

We find that petitioner has exhausted his State remedies in view of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 837 (1963), not only with reference to the validity of his conviction in the first instance but concerning the claimed denial of counsel on appeal from the denial of a writ of habeas corpus by the State district court. For the reasons, and by reason of the authorities, hereinafter discussed it is not believed that the failure of the defendant to proceed with his appeal without counsel constituted such a clear waiver of his constitutional rights as would preclude his maintaining the present petition in this court. Nor do we think that there is any other sufficient showing upon which to base a finding of waiver.

However, the real question, which is sharply at issue, is whether petitioner was afforded his constitutional rights under the Fourteenth Amendment—equal protection and due process—in effectuating his appeal from the denial of the writ of habeas corpus in the State courts. Upon the basis of petitioner's admitted impecuniosity, counsel was appointed to represent the petitioner in the State habeas corpus proceedings. Following

---

to perfect an appeal could amount to a deprivation of due process in and of itself.

"Finally, it may be observed that technical considerations of abstract justice in relation to guilt or innocence as charged in retrospect vie in this case with the practical rightness of legal proceedings as they actually occurred before the State courts. The proper reach of habeas corpus proceedings, and their limitations, have furnished the hard, but inescapable and essentially just answer."

**4.** The evidence before this and the State district court tended to establish that petitioner entered his plea in the State court as a direct result of threats of great bodily harm directed against his wife if he did not do so. While there was no indication that the prosecution had anything to do with these alleged threats, there were circumstances tending to support the petitioner's contention that they were made, that they had a coercive effect on petitioner and that, as a result, the plea of the defendant was not voluntary. Whether this in and of itself would raise any Federal issue, is problematical.

But it seems possible that in any event the question of State relief could be so close as to make the assistance of counsel especially vital.

the denial of the writ, counsel filed on petitioner's behalf a notice of appeal to the Supreme Court of the State of Utah. Thereafter counsel was appointed Deputy County Attorney of Salt Lake County. By reason of the possible conflict of interest, appointed counsel was permitted by the Supreme Court to withdraw. Upon petitioner's request for other counsel to effectuate the appeal already pending, petitioner was sent the following letter by the Clerk of the Utah Supreme Court:

"Your letter of December 28 addressed to Mr. Chief Justice Henriod requesting appointment of counsel has been handed to me with directions to inform you that inasmuch as this appeal is from a denial of a writ of habeas corpus, it is a civil case and there is no obligation for appointment of counsel except in appeals in criminal cases."

By reason of petitioner's subsequent failure to timely file his brief on appeal, the appeal was dismissed. It is that denial of counsel which petitioner now contends [5] prevented him from filing his brief on appeal and deprived him of an effective appeal because of his indigency.

■ We have considered whether the refusal of the State Supreme Court to appoint counsel to proceed with the appeal could have been other than the controlling factor in the dismissal of his appeal. It has been argued by the State that petitioner could have prepared and filed his own brief, and if this had been done, the appeal would have been considered by the State on its merits. We think this is placing too slight a value upon the right to counsel, if it otherwise existed.[6] Nor do we believe that there could have been any waiver of an appeal by petitioner's failure to proceed without counsel any more than in People v. Douglas, Cal., 38 Cal.Rptr. 884, 392 P.2d 964, where the petitioner had refused to go to trial represented by a public defender expousing possibly conflicting interests on behalf of a co-defendant.

We do not reach the question of whether there were grounds for appeal except to note that the grounds alleged and established were not frivolous. It seems enough to recognize that their validity should be determined, if a review is necessary, not by a Federal court but by the State Supreme Court.

■ Deprivation of the right to counsel in a habeas corpus proceeding may not be considered ipso facto a denial of a constitutional right. But under the circumstances of this case, a person cannot be constitutionally deprived of any consideration whatsoever of his case on appeal merely by reason of his indigency. The blanket application of the State court of the proposition that the appointment of counsel in a habeas corpus proceeding, being a "civil case" is not necessary, applies a label, innocuous under some circumstances,[7] under the facts of

---

5. Although it was alleged in the petition that the transcript of the State proceedings was taken from petitioner further precluding the preparation of his brief on time, counsel appointed by this court reports that after notification of the Clerk's refusal to appoint counsel the time for filing petitioner's brief expired. The transcript was then picked up from petitioner for the purpose of enabling the Attorney General's Office to prepare its case. It is clear that had an attorney been appointed for petitioner, there would have been no trouble in his again obtaining the transcript. Hence the doctrine of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), is not directly invoked.

6. The extent to which the Supreme Court of the United States has moved in recognizing the importance of that right in a less focused context is reflected in its latest decision on the subject, Escobedo v. Illinois, 84 S.Ct. 1758

7. Cf. Burleigh v. Turner, supra, at 414 of 388 P.2d, where the Utah Court stated: "This matter was not presented in the pleadings or the hearing before the Fourth District Court. It is raised for the first time upon this appeal. Habeas corpus being a civil remedy it is not necessary for this court to consider this point. * * * [Citing, Tygesen v. Magna Water Co., 13 Utah 2nd 397, 375 P.2d 456.] However, we might note

the present case in impingement of constitutional rights of the petitioner.

The answer to our present problem seems inexorably presaged, if not completely structured, by the four decisions of the Supreme Court of the United States cited in footnote 2.

Dowd v. United States, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215, supra, holds that the discriminatory denial of the right to appeal is a violation of the Equal Protection Clause of the Fourteenth Amendment, and that "[u]nder the peculiar circumstances of this case, nothing short of an actual appellate determination of the merits of the conviction—according to the procedure prevailing in ordinary cases—would cure the original denial of equal protection of the law."

Smith v. Bennett, supra, indicates that denial by the State to those unable to pay filing fees of postconviction remedies available to others in habeas corpus proceedings is a denial of the equal protection of the laws in violation of the Fourteenth Amendment. This case points out that while a habeas corpus proceeding is procedurally a "civil remedy" as the Utah Supreme Court has emphasized, it does not follow that its availability may be made to depend upon the financial ability of petitioner. This case also has persuaded me that I should

not undertake to pass upon the ultimate merits of petitioner's claim of a coerced plea beyond what already has been stated, by the following language of Mr. Justice Clark, speaking for a unanimous court:

"The Attorney General of Iowa also argues that indigent prisoners in the State's custody may seek 'vindication of federal rights alleged to have been denied by the state' in the federal courts. But even though this be true—an additional point not involved or passed upon here—it would ill-behoove this great State, whose devotion to the equality of rights is indelibly stamped upon its history, to say to its indigent prisoners seeking to redress what they believe to be the State's wrongs: 'Go to the federal court.' Moreover, the state remedy may offer review of questions not involving federal rights and therefore not raisable in federal habeas corpus." [8] (Smith v. Bennett, supra).

In Douglas v. California, the Supreme Court reiterated with approval the words of Justice Traynor of the California Supreme Court in his dissent before the lower court that the "[d]enial of counsel on appeal [to an indigent] would seem to be a discrimination at least as invidious as that condemned in Griffin v. People of State of Illinois * * *." [9]

---

that even in a criminal case it is not a denial of due process for a defendant's attorney to fail to perfect an appeal. [Citing McGuire v. Hunter, (1943 C.A. 10), 138 F.2d 379, reversed on other grounds, 322 U.S. 710, 64 S.Ct. 1053, 88 L.Ed. 1553; see also: 19 ALR 2d, p. 794.]"

The reliance upon McGuire v. Hunter for the Tenth Circuit is misplaced, since there was merely failure of privately retained counsel to perfect an appeal, no question of equal protection of the laws involved, and no appeal in habeas corpus.

8. Cf. Clark v. Turner, 15 Utah 2d 83, 387 P.2d 557 (1963), and Thompson v. Harris, 107 Utah 99, 152 P.2d 91 (1944).

9. While in Smith v. Bennett as above indicated the court found habeas corpus to be a "civil action" for procedural purposes, it recognized the writ as the

"'highest remedy in law, for any man that is imprisoned.'" and made clear that it must not be frittered away through semantic exercise.

"The availability of a procedure to regain liberty lost through criminal process cannot be made contingent upon a choice of labels. Ever since the Magna Charta, a man's greatest right—personal liberty—has been guaranteed, and the procedures of the Habeas Corpus Act of 1679 gave to every Englishman a prompt and effective remedy for testing the legality of his imprisonment. Considered by the Founders as the highest safeguard of liberty, it was written into the Constitution of the United States that its 'privilege * * * shall not be suspended, unless when in Cases of rebellion or invasion the public Safety may require it.' Art. I, § 9. Its principle is embedded in the fundamental law of

And in Lane v. Brown, supra, it was held that Indiana had deprived a petitioner of a right secured by the Fourteenth Amendment by refusing him appellate review of the denial of a writ of error *coram nobis* solely because of his poverty.[10] Thus if our present conclusion is not a part of the ground already actually reached by the Supreme Court of the United States it now lies well under the next step to which there already has been a commital. And with the steps already definitely taken, whether we like them or not, it would be incongruous and unreasonable, if not impossible, to stop short of this one.

*The writ of habeas corpus is hereby granted.*

47 of our States. It has long been available in the federal courts to indigent prisoners of both the State and Federal Governments to test the validity of their detention. Over the centuries it has been the common law world's 'freedom writ' by whose orderly processes the production of a prisoner in court may be required and the legality of the grounds for his incarceration inquired into, failing which the prisoner is set free. We repeat what has been so truly said of the federal writ: 'there is no higher duty than to maintain it unimpaired,' Bowen v. Johnston, 1939, 306 U.S. 19, 26, 59 S.Ct. 442, 446, 83 L.Ed. 455 [461], and unsuspended, save only in the cases specified in our Constitution. When an equivalent right is granted by a State, financial hurdles must not be permitted to condition its exercise."

10. " * * * Both the District Court and the Court of Appeals were of the opinion that the issue in the present case is controlled by recent decisions of this Court which have held constitutionally invalid procedures of other States found substantially to deny indigent defendants the benefits of an existing system of appellate review. We are in complete agreement.

"In Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, the Court held that a State with an appellate system which made available trial transcripts to those who could afford them was constitutionally required to provide 'means of affording adequate and effective appellate review to indigent defendants.' Id., at 20, 76 S.Ct. 591. 'Destitute defendants,' the Court held, 'must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.' Id., at 19, 76 S.Ct. 591. In Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209, involving a $20 fee for filing a motion for leave to appeal a felony conviction to the Supreme Court of Ohio, this Court reaffirmed the Griffin doctrine, saying that 'once the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty. * * * This principle is no less applicable where the State has afforded an indigent defendant access to the first phase of its appellate procedure but has effectively foreclosed access to the second phase of that procedure solely because of his indigency.' Id., at 257, 79 S.Ct. 1168. In Smith v. Bennett, 365 U.S. 708, 81 S. Ct. 895, 6 L.Ed.2d 39, the Court made clear that these principles were not to be limited to direct appeals from criminal convictions, but extended alike to state postconviction proceedings. 'Respecting the State's grant of a right to test their detention,' the Court said, 'the Fourteenth Amendment weighs the interests of rich and poor criminals in equal scale, and its hand extends as far to each.' Id., at 714, 81 S.Ct. 898. In Eskridge v. Washington Prison Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269, the Court held invalid a provision of Washington's criminal appellate system which conferred upon the trial judge the power to withhold a trial transcript from an indigent upon the finding that 'justice would not be promoted * * * in that defendant has been accorded a fair and impartial trial, and in the Court's opinion no grave or prejudicial errors occurred therein.' Id., at 215, 78 S.Ct. 1062. There it was said that '[t]he conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript.' Id., at 216, 78 S.Ct. 1062.

"The present case falls clearly within the area staked out by the Court's decisions in Griffin, Burns, Smith, and Eskridge. To be sure, this case does not involve, as did Griffin, a direct appeal from a criminal conviction, but Smith makes clear that the Griffin principle also applies to state collateral proceedings, and Burns leaves no doubt that the principle applies even though the State has already provided one review on the merits. * * *" Lane v. Brown, 372 U.S. 483–485, 83 S.Ct. 772–773, supra.

Petitioner is being held in violation of his constitutional rights. Petitioner must be released from his present commitment unless accorded by the State his right to appeal with the assistance of counsel from the denial by the State district court of his application for a writ of habeas corpus or given other commensurate relief affording him his constitutional right to equal protection of the law. Counsel for petitioner is requested to draft an appropriate form of order in harmony with the views herein expressed, to be settled on notice. The effectiveness of the order of discharge will be stayed for a reasonable time to afford the State an opportunity to appeal this decision to the United States Circuit Court of Appeals if it be so advised. Dowd v. United States, supra; Lloyd v. Warden, Maryland Penitentiary, D.C.D.Md., 229 F.Supp. 364 (1964).