Anastacio **GALLEGOS** and **Rellis Gallegos, Petitioners,**

v.

John W. **TURNER, Warden, Utah State Prison, Responde**...

No. C 1–66.

United States District Court
D. Utah,
Central Division.
July 26, 1966.

R. J. Rimensberger, and Gordon Hoxsie, Salt Lake City, Utah, for petitioners.

Ronald N. Boyce, Asst. Atty. Gen. of Utah, for respondent.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

This is a habeas corpus proceeding. The petitioners are state prisoners. They are now serving terms of imprisonment at the Utah State Prison for second degree murder. The convictions were affirmed by the Supreme Court of the State of Utah in State v. Gallegos, 16 Utah 2d 102, 396 P.2d 414 (1964). Petitioners' application for a writ of habeas corpus after hearing was denied by the state district court, and on appeal that denial also was affirmed. Gallegos v. Turner, Warden, 17 Utah 2d 273, 409 P. 2d 386 (1965).

The petitioners contend here that they are restrained of their liberty by state authority in violation of their constitutional rights by reason of the knowing employment of false testimony by the prosecuting attorney in the state court.

It is also asserted in substance that petitioners were refused the aid of counsel on appeal of the denial of their habeas corpus petition in the state court in violation of their constitutional right to counsel, due process and the equal protection of the law.

Petitioners have exhausted their state remedies, 28 U.S.C. § 2254; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). It is true that petitioners did not expressly direct the attention of the State Supreme Court to their present contention that its denial of new counsel, in view of the private representations to the court by counsel who had been appointed that their appeal was without merit, amounted also to a denial of due process and the equal protection of the laws. But it would be unrealistic to suppose that any related rights were not foreclosed effectually by that court, wrongly or rightly, in deciding the case without appointing new counsel.

This court, heedful of the teachings of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and the cases from this circuit applying its doctrine, appointed counsel for the petitioners and granted a hearing. The state district attorney, as well as the attorney who represented the petitioners in that proceeding, testified. The witness Hoopiana, whose testimony it was charged had been perjured, also testified, and the transcripts of evidence in the state criminal prosecution and the habeas corpus proceeding were received in evidence. Upon the basis alone of the testimony of the witnesses appearing before me, as well as in consideration of the record before the state court, I find that petitioners failed to discharge their burden of proving that the state prosecutor knowingly utilized perjured testimony. Indeed, I agree with the comment of Mr. Justice Crockett speaking for the court in Gallegos v. Turner, Warden, supra, 409 P.2d 386, 387:

"There is no proof that Mr. Hoopiana lied at the trial, only that there was some inconsistency between his then testimony and that which he gave at

the preliminary hearing. The mere fact of inconsistency does not constitute proof that the testimony he gave at the trial was false. Much less does it support the charge that the prosecutor knew of perjured testimony but nevertheless wilfully and intentionally used it * * * "

This ordinarily would end inquiry by a federal court in such a case were it not for a problem injected into the record at the appellate level which is deemed to require further notice.

Following the habeas corpus hearing before the lower state court, an appeal was duly taken to the Utah Supreme Court by counsel who theretofore had been assigned, petitioners being impecunious. By agreement with their counsel, petitioners actually wrote the brief filed in support of this appeal. It having then come to their attention that counsel did not intend to argue the appeal orally before the Supreme Court, petitioners on October 4, 1965, addressed a letter to Mr. L. M. Cummings, Clerk of that court in which it was stated:

" * * * We have been informed, indirectly * * * that his (the assigned attorney's) office will not argue our appeal now pending before the State Supreme Court, and that if we wish to have our briefs argued, we must obtain other counsel outside his office.

"Therefore, inasmuch as we are proceeding in Forma Pauperis we are hereby requested that you as Clerk, bring to the attention of the Chief Justice the fact that we wish to have counsel appointed for the purpose of arguing our case before said Court, and that such counsel as may be appointed by the court be requested to contact us personally here at the Utah State Prison with respect to our cause.

"Please be advised that we wish to avoid any unnecessary delay in this matter, and your attention to this matter is appreciated.

"Thank you for your indulgence."

The following response was received by petitioners under date of October 5, 1965, from the Supreme Court Clerk:

"I have your letter of October 4 requesting this Court to appoint an attorney for you to argue your appeal from a denial of a Writ of Habeas Corpus.

"I submitted your letter to the Chief Justice and I am directed to advise you that * * * (the attorney) applied for a writ and tried it for you in the District Court. When you took the appeal and the record was received, he came down and got it and after reviewing it carefully, came to the conclusion that there was no error which would lead him to believe that a reversal could be secured and he notified us of this fact. Notwithstanding this advice, you filed a brief and the case is now pending awaiting submission to the court.

"You have been represented by competent counsel and the Court does not feel that it should appoint an attorney just to present arguments on the appeal when they have been fully covered in the brief which you filed."

No other counsel was appointed for the petitioners, and they had no opportunity through counsel or in person to present oral argument on appeal. The Supreme Court considered the briefs and filed its opinion and decision in the case on December 27, 1965, sustaining denial of the writ of habeas corpus as hereinabove noted. (17 Utah 2d 273, 409 P.2d 386, supra.)

In another case I have held that the denial of counsel in a state habeas corpus proceeding amounted as to an indigent defendant to an unconstitutional denial of the equal protection of the laws, particularly when this precluded an effective appeal which the state accords to persons of means. La Faver v. Turner, 231 F. Supp. 895 (D.C.Utah 1964); see also La Faver v. Turner, 345 F.2d 519 (10th Cir. 1965). Despite the state's argument that the Tenth Circuit has not regarded habeas corpus proceedings collaterally attacking a judgment of conviction as one

in which counsel is demandable as of right, I find nothing in any controlling decision which leads me to change the views expressed in *La Faver,* and hence I shall proceed on the basis of the principles therein accepted to consider the extension of the problem of that case as presented by the case at bar.

We are here concerned not only with an alleged deprivation of the right of counsel, but of oral argument before the appellate tribunal and, beyond these, with a claimed frustration of effective appeal by an informal confession of the alleged lack of merit by former counsel, in magnification of the possible prejudice resulting in the refusal of the appointment of new counsel.

In this context, guide lines are badly needed by counsel as well as litigants.[1] The Canons of Professional Ethics of the American Bar Association furnish but limited practical guides in the twilight zone with which we are confronted.[2]

There are practical difficulties and pressures which make procedural shortcuts attractive.[3] Such problems not

1. Judge Burger in a concurring opinion in Williams v. United States, 120 U.S.App. D.C. 244, 345 F.2d 733 (1965) observed: "With the enormous expansion of indigent representation comes a need for some guidelines to protect the volunteer lawyer who, after full consideration, decides on a course of action which his indigent client opposes." I agree. Guide lines are well marked in that and other opinions on the one side, making it clear that no lawyer is required, nor should he be expected, to stultify himself or vouch for arguments or contentions known by him to be without merit, and justifiably protesting the abuse often heaped without reason upon conscientious counsel. That guide lines on the other side have not been spelled out adequately may be indicated by the circumstances of this case where assigned counsel of unquestionable competency, diligence and character appears in good faith to have commingled the advocatory and adjudicatory processes with the sanction of the court, to raise at least some justifiable question in a case which otherwise would have been free from any constitutional problem.

2. Canon 15. " * * * The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client."

Canon 44. "Withdrawal from Employment as Attorney or Counsel. The right of an attorney or counsel to withdraw from employment, once assumed, arises only from good cause. Even the desire or consent of the client is not always sufficient. The lawyer should not throw up the unfinished task to the detriment of his client except for reasons of honor or self-respect. If the client insists upon an unjust or immoral course in the conduct of his case, or if he persists over the attorney's remonstrance in presenting frivolous defenses, or if he deliberately disregards an agreement or obligation as to fees or expenses, the lawyer may be warranted in withdrawing on due notice to the client, allowing him time to employ another lawyer. So also when a lawyer discovers that his client has no case and the client is determined to continue it; or even if the lawyer finds himself incapable of conducting the case effectively. Sundry other instances may arise in which withdrawal is to be justified. * * * "

3. This court is mindful of the difficulties posed by numerous questionable applications for collateral relief from criminal convictions. It cannot be unsympathetic to the expressed impatience of the Utah Supreme Court in its affirmation of the decision of the lower state court and by the Attorney General's Office in its brief here at the myriad attacks on the finality of state judgments in criminal cases. Yet such impatience must not be permitted to blur the requirements of due process or other basic requirements. The doctrine of exhaustion of state remedies

only beset the courts, but pose difficult dilemmas for counsel.[4]

I believe that these dilemmas and practical difficulties must be re-solved consistently with our adversary system in order to avoid grave problems of due process and the equal protection of the laws.[5] And I believe that they

as a prerequisite to federal court intervention presupposes the effectiveness of remedies accorded by the state which must be independently examined by federal courts. See Clark v. Crouse, Warden, 359 F.2d 785 (10th Cir. 1966). It might meet many of the practicalities of the problem apart from this question of due process to expect attorneys representing criminal defendants in collateral attacks upon convictions to sift the cases as they prepare them for presentation, and even though the cases are already in a posture to be heard by a court to informally decide and report to the court any lack of merit. If this should be an acceptable practice in collateral proceedings, it might well furnish a solution in cases directly attacking criminal convictions by appeal or even during the trials, where counsel for the accused might be expected to report their opinions that their clients really have no meritorious defenses. This would save much bother. I suggest that the reason such a system would be unacceptable at the trial stage is not only that it would defeat the right to trial by jury and the right to counsel itself, but because it would also attack the heart of due process as we understand it—the right to be heard, if we are to be heard at all, through an advocate and not an adjudicator, and the right to have the issues decided by a court and not by an advocate. While the right to counsel may attach only to certain proceedings and at certain critical stages, these other more general but vital rights should be recognized in all types of litigation, and that is why in this case the distinction between direct and collateral proceedings may be largely irrelevant.

4. Responding to assignments by the court, counsel are often asked by their clients to present legal contentions for which they cannot conscientiously vouch. And they are furnished only fragmentary and in a sense conflicting guidance by the canons of professional ethics. Spread-eagled between their duties to the court, their client and the public, with the dictates of their own professional judgment and conscience forming the fourth point of reference, it is understandable that on occasion they should pull excessively at one or two points in disregard of others. Yet, I am convinced that if we are to continue to utilize the strengths of the adversary system, and sustain the essentials of our judicial system, we must tolerate their concomitant—representation of clients by their attorneys before the courts, and that competing considerations reasonably must be reconciled.

5. Attorneys appointed to represent those who by reason of their financial condition are unable to employ counsel are held to substantially the same obligations toward their clients as employed counsel. And a "public defender" generally is under the same obligation of defending an accused as an employed attorney. Jones v. Cunningham, 297 F.2d 851 (4th Cir. 1962); United States v. Tribote, 297 F.2d 598 (2d Cir. 1961); Willis v. Hunter, 166 F.2d 721 (10th Cir. 1948). See People v. Morris, 3 Ill.2d 437, 121 N.E.2d 810 (1954). If placed in an essentially different position, the appointment of counsel to "help" a financially incompetent accused might be a detriment rather than an aid and thus only accentuate an invidious discrimination by reason of financial condition. See Powell v. State of Alabama, 287 U.S. 45, 53 S. Ct. 55, 57, 77 L.Ed. 158 (1932); United States v. Lane, 196 F.Supp. 484, aff'd 302 F.2d 537 (7th Cir. 1962).

Under the adversary system it is the province and duty of counsel to present to a court for adjudication in due process of law the contentions of clients which are relevant and not patently frivolous. Except under extraordinary circumstances, this duty cannot be discharged by the abandonment of these contentions where the client has the right to have them appropriately adjudicated by a court. If a claim is patently frivolous it should not be submitted for adjudication, but being before the court it ordinarily harmonizes with our adversary system for that determination to be made by the court rather than by counsel, especially in case of assigned counsel acting without the consent of his client.

Even in civil cases an attorney ordinarily does not have implied authority to liquidate his client's cause by compromise or consent to a dismissal on the merits without the consent of his client. See Anno: Authority of an Attorney to Dismiss or Otherwise Terminate Action, 56 A.L.R.2d 1290. Cf. State v. Shuff, 9 Idaho 115, 72 P. 664 (1903); Pruitt v. State, 37 Ariz. 400, 294 P. 629 (1931). Lack of authority in criminal cases, in-

best can be settled as a practical matter by steady adherence to established principles of our adversary system and due process.[6]

volving as they often do the liberty of individuals and sensitive constitutional rights, the authority of counsel should be even more circumscribed. The employment of an attorney ordinarily gives him the implied or apparent authority to waive mere informalities, technicalities and procedures but not the substantial legal rights of the client. 7 C.J.S. Attorney and Client § 100.

Oral arguments may be by the express or implied permission of criminal defendants waived by counsel, particularly if consideration of the case may be reasonably expected notwithstanding, and there is no overreaching against the client by the waiver; but a waiver by counsel must not be permitted to operate as a confession or admission without the knowledge or consent of the accused, nor to unfairly deprive the accused of having his cause effectually presented to the appellate court on its merits.

This does not mean that counsel, whether representing an indigent or a person of means, may present arguments or maintain positions as his own which are dishonorable or devoid of merits. Candor and frankness toward the court are to be expected and esteemed. But neither is it the province of counsel to substitute his opinions as to the merits of his client's cause for a judicial determination. See People v. Hyde, 51 Cal.2d 152, 331 P.2d 42 (1958). Nor is it permissible in granting the right to counsel to deny an indigent the right to any judicial determination at all. Counsel has the duty, unless the contentions of his client are clearly frivolous, to present them to the court fairly for whatever merit they may possess and in the manner best calculated to obtain for them a hearing and consideration by the court which has the ultimate responsibility of deciding their merit. See Johns v. Smyth, 176 F.Supp. 949 (D.C.Va.1959). If all views ultimately upheld by the courts had to have been initially approved as their own by all counsel exposed to them in earlier stages of the case, many vital constitutional principles now taken for granted would never have been considered by appellate courts in the first instance, and particularly would not have been considered or ruled upon favorably by the Supreme Court.

In Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (June 20, 1966), Mr. Justice Fortas, speaking for the court, observed: "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." Pertinent here seems the corollary that in our adversary system it is enough for an advocate to advocate rather than to assume to judge. It is a hard distinction but as between this course and the expectation that counsel should only advance arguments or contentions which he himself has judged to be meritorious, the consequences of it would be less disastrous to our processes of law.

6. It was said in Wood v. United States, 357 F.2d 425 (10th Cir. 1966), "An attorney 'is bound, by all fair and honorable means, to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law.'" (See also Canon 5, American Bar Association Canons of Professional Ethics.) This does not require an attorney, whether retained or appointed, to advance as contentions of his own arguments known by him to be without merit, but when a case is before the court it ordinarily is suitable that the contentions of his client at least should be reported as such without unnecessary disparagement. As Winston Churchill remarked with reference to his own position with the British Empire, a lawyer is not appointed to liquidate his client's cause. I believe the proper resolution of the two competing considerations is indicated in Wood, supra, itself, where the attorney presented in oral argument his client's contentions fairly to the appellate court, while frankly admitting that he could find no supporting authority. There was no abandonment of his client's cause, and yet no attempt in any way to mislead the court; and the court was placed in the best possible position to determine the client's claims on their merits. In other words, it is an advocate's duty under our adversary system in devotion to the interests of his client, honorably to present his client's cause to the court in its most favorable light. See Miller v. National City Bank of New York, 166 F.2d 723 (2d Cir. 1948). Unless this is done, the views of the opposition being represented in their best light, justice is not evenhanded.

It sustains rather than derogates against our profession if counsel presents the contentions of his client as such, even though he does not personally underwrite

In light of controlling principles of constitutional law already sufficiently delineated in the cases and the less clearly defined responsibilities of counsel in relation to our adversary system and the adjudicative process, my views being indicated in the margin, it remains to be determined whether the facts here disclose any departures of constitutional significance.

The area of inquiry in this connection is quite limited to be sure. Assigned counsel did perfect an appeal. Petitioners prepared their own brief with their eye singly upon the federal court because they wished to expedite a final state ruling which apparently they assumed would be adverse.[7] Assigned counsel was, indeed, faced with a situation which well could have tried his patience if not his self respect—the necessity of arguing upon the basis of his clients' inartful brief, before a high court of perceptive and distinguished judges, propositions to which he could not personally subscribe. That he chose to informally represent to the court that he could see no merit in his clients' contentions rather than to present those contentions regularly in open court in their best possible light without personally vouching for them as in Wood v. United States, 357 F.2d 425 (10th Cir.

them as his own. It may not be according an indigent defendant his right to counsel or the equal protection of the laws to tell counsel generally as we do in the Canons of Professional Ethics, that it is improper to express in argment a personal opinion concerning a defendant's guilt or innocence, and yet to expect counsel to deny his client access to the independent judgment of the court by reason of counsel's own expressed belief that his client's contention does not possess sufficient merit to justify hearing. Within the requirements of self respect, honor and fairness, there is place for every shade and type of advocacy, and in no sense must it amount to a confessional.

It seems to me that the correct principles, and the practical procedures, may be extrapolated in borderline cases from Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958) where it was said in a case involving allowance of an appeal in forma pauperis where good faith constituted a statutory reason for denial, 28 U.S.C. § 1915(a): " * * * In this case, it appears that the two attorneys appointed by the Court of Appeals, performed essentially the role of *amici curiae*. But representation in the role of an advocate is required. If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course he may ask to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied. * * *"

It is pointed out in Lundberg v. Backman, 11 Utah 2d 330, 358 P.2d 987 (1961), that the duty to perfect an appeal does not arise from mere employment to represent a client in the defense of a case, but only in the event the attorney is directed to take an appeal and agrees to do so. Nevertheless, after an appeal has been taken and counsel has been directed and has agreed to prosecute it, the situation may be markedly different. Nor is this a case such as State v. Dennis, 14 Utah 2d 403, 385 P. 2d 152 (1963), where a lawyer's apparently faithful but unorthodox tactics on behalf of his client were held not to be inconsistent with his role of counsel. The Utah court said there: "A lawyer's job is to represent and defend his client in spite of his own feeling with respect to his client's guilt or innocence,—otherwise and simultaneously, he would don the robe of judge and claim membership on the jury, whereas, he is but liaison between." It seems to me that an advocate should present the contentions of his client in their best possible light as his client's contentions if he is not in a position to present them as his own, particularly when these contentions are the only matters before the court. I do not believe that there necessarily must be a conflict between honorable representation and conviction on the part of counsel that ultimately the representation may not be successful. I believe within the guide lines indicated above, an attorney's duties to his client and the court both may be properly performed. If they cannot be, we must drastically revise our commitment to the adversary system of justice and to due process itself, as these have been understood up to this time.

7. It was stated that "by writing our own brief we will save considerable time in getting on into the Federal Courts. * * *"

1966), or, after notice to his clients, to apply for leave to withdraw as in Ellis v. United States, supra, presents the narrow peg upon which any constitutional contention must be hung.

In this case, unlike the situation indicated in State of Utah v. Montez, 17 Utah 2d 299, 410 P.2d 764 (1966), and La Faver v. Turner, supra, the Utah Supreme Court actually did consider the arguments of the petitioners as reflected in their briefs and made a ruling on the merits despite its refusal to appoint counsel. Yet the question still persists whether denial of both oral argument and the right to be represented by counsel may have so affected the consideration of the appeal on its merits as to have been prejudicial.

It is only a partial answer to argue, as the state does, that in federal practice it has been said that there is no right as of course to the appointment of counsel in habeas corpus cases, citing Rider v. Crouse, 357 F.2d 317 (10th Cir. 1966) and Flowers v. State of Oklahoma, 356 F.2d 916 (10th Cir. 1966). We have here a situation where counsel was in fact appointed and where the difficulties that would have been involved were counsel not appointed at all have been, if anything, compounded by counsel's effectual neutralizing of his clients' contentions. If there were possible merit to the appeal, the denial of new counsel under the circumstances shown by the record here and the opportunity of presenting oral argument on appeal could amount to an unconstitutional denial of due process of law, as well as to an invidious discrimination by reason of financial inability to employ counsel. On anything except a patently frivolous appeal, oral argument might be deemed to be an important right, the stage at which it is presented a critical stage of an appellate proceeding,[8] and an unauthorized waiver of contentions on appeal a deprivation of due process because inconsistent with basic principles of fairness in respect to both our adversary and judicial systems. Cf. Johns v. Smyth, 176 F.Supp. 949 (D. C.Va.1959). While an appeal in itself is not an essential to due process of law, Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Clough v. Hunter, 191 F.2d 516 (10th Cir. 1951), when it is granted it must be in accordance with common standards of due process and afforded on a reasonably similar basis to all members of the same class.

We are, however, concerned with constitutional rights and not merely with constitutional forms. And to determine whether constitutional rights have been violated regard must be had to the question of possible prejudice from the claimed unconstitutional acts or omissions. Although one in form could be deemed denied a constitutional right under other circumstances, this deprivation would not amount to the denial of recognizable dimensions unless some possible prejudice could be found to have occurred to the defendant. Pearce v. Cox, 354 F.2d 884 (10th Cir. 1965); Gantar v. Cox, 351 F.2d 65 (10th Cir. 1966). See also Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and Cohen v. Warden, 252 F.Supp. 666 (dnd. 1966). And the denial of counsel or oral argument for the purposes of a purely frivolous appeal cannot be considered prejudicial. See United States v. Johnson, 327 U.S 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946). Flowers v. State of Oklahoma, 356 F.2d 916 (10th Cir. 1966), and Rider v. Crouse, 357 F.2d 317 (10th Cir. 1966), supra; (see also Ratley v. Crouse, 365 F.2d 320 (10th Cir., May Term 1966)), do not establish that failure to appoint counsel or to grant hearings in habeas corpus or other collateral proceedings may not under any circumstance amount to a deprivation of constitutional rights. But they do demonstrate that with reference to purely frivolous or insubstantial issues neither the adversary system nor the due process clause re-

---

8.  Londoner v. City and County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908); Bland v. State of Alabama, 356 F.2d 8 (5th Cir. 1966).

quires counsel or hearing, although otherwise the constitutional right to these might be plain.

We must therefore return to the basic claims raised in the habeas corpus proceeding and sought to be reviewed on appeal to determine whether they were so insubstantial as to render any apparent departure from the form or procedure generally contemplated by constitutional guarantees of no possible prejudice or practical effect.

All of the claims raised initially in the state habeas corpus proceeding except that concerning alleged perjured testimony were abandoned, and it is clear from the undisputed record that they possessed no merit. The trial record furnishes no inherent basis for believing that the claim of perjured testimony had substance. Further searching and specific inquiry both before this court and the state trial court demonstrated that this claim in fact also was without substance.

█ In *La Faver*, supra, a significant point was that the claims of petitioner on appeal "were not frivolous", and that by refusal to appoint counsel petitioner effectually had been deprived of his right to appeal by reason of his impecuniosity, the state court not having even considered the merits of the appeal. We do not consider the present circumstance that the court did decide the merits of the appeal to mark a determinative difference, since without the benefit of counsel or oral argument petitioners may have been substantially prejudiced, nonetheless, with respect to any arguable contention. But on the facts that now have been fully explored it is clear by reason of the insubstantial nature of petitioners' claims on appeal taken in their most favorable light that neither oral argument nor the continued representation of counsel could have altered the result. Being of this view, I must deny the application for a writ.

The foregoing opinion states the court's findings of fact and conclusions of law. Rule 52, F.R.Civ.P. Judgment will be entered denying the plaintiffs' petition for a writ of habeas corpus for the reasons stated.