THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JIMMIE LOWERY, Defendant-Appellant.

Third District   No. 76-147

Opinion filed August 9, 1977.

Robert Agostinelli and Larry Mackey, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Daniel Doyle, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendant, Jimmie Lowery, was indicted for the offense of murder in violation of section 9—1(a) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)). After a jury found defendant guilty of voluntary manslaughter, the circuit court of Will County sentenced him to a term of imprisonment of from 6 to 18 years.

The sole issue presented for review is whether defendant was denied effective assistance of counsel. In light of our decision and the nature of this issue it is unnecessary to set forth in detail the evidence adduced at trial upon which defendant's conviction rests.

Testimony presented by the State's witnesses at trial establish that Victor Bostjanncic, Sr., died in an incident in which the defendant was involved. One State witness, Jim Young, testified he was running to the scene of the incident and when he was two feet from Bostjanncic, he observed defendant striking the victim with a "police zap," which

appears to be an object akin to a blackjack. He also observed defendant kicking the victim. Another witness testified she observed the defendant strike Bostjanncic twice with his fists after which she claimed to have seen Lowery pull "a long black object from behind him" and strike the elder Bostjanncic twice with the object. A third witness observed defendant swing a black object at Jim Young as the defendant was fleeing the scene, but did not observe the defendant strike the victim. Defendant's possession of the black object as he was fleeing was also confirmed by one of the other State's witnesses.

Prior to trial, the defendant sent the assigned trial judge a letter in which the defendant requested a new attorney, expressing dissatisfaction with his court appointed counsel, Mr. Falk. The court responded personally to the defendant several days later when the defendant was in court on a preliminary motion. The trial judge advised defendant that he would not replace Mr. Falk. No further expression of dissatisfaction by defendant occurred in the days remaining before trial.

During trial defendant again stated that he was dissatisfied with counsel, desired appointment of new counsel, and did not believe he was getting a fair trial. Several incidents occurred during trial which further demonstrate the existence of a strained relationship between defendant and his counsel. In the early stages of trial, defendant explained to the court that he had learned that he was entitled to produce character witnesses at trial, but suggested that counsel had either failed to inform him of this fact or had advised against using character witnesses, or was being uncooperative in assisting defendant to locate any such witnesses. After first admonishing defendant on the tactical shortcomings of using good character witnesses, the court ruled that the decision on use of character witnesses was one for the attorney to make.

At the same time as the discussion on character witnesses occurred, defense counsel informed the court that he had subpoenaed a potential witness for defendant, but after interviewing her, determined that her testimony, while helpful in certain minimal aspects, would be overall very damaging to the defendant and had decided not to call her. In spite of this, defendant informed the court he wished to call this witness to testify. The court found that the decision was one again for defense counsel to make and ruled that defense counsel's decision would stand.

After the State rested its case and outside the presence of the jury, defense counsel informed the court that the defendant wished to take the stand against counsel's advice not to do so. Even though counsel had consulted with defendant on a number of occasions, he was uncertain as to the specifics of what defendant would say if he testified. After first being admonished by the court as to risks of testifying, defendant took the stand. At the request of defense counsel, the court allowed the

defendant to testify in narrative form. Defense counsel offered no reason for such a request.

After asking four preliminary questions, name, age, place of birth, and whether defendant had a prior theft conviction, defense counsel asked his client to tell the jury what he remembered about February 23, 1975. When defendant finished relating his story to the jury, his attorney asked him if he remembered anything else about the fight. Defendant answered that he could not remember anything more and defense counsel ended the direct examination. After a rigorous cross-examination by the State, the defendant's attorney asked no questions on redirect.

At the instructions conference, defense counsel informed the court that his client wished to proceed on the charge of murder only, to which the State agreed. However, the court found that because defendant's own evidence raised the issues of voluntary manslaughter, justifiable use of force, and the defense of intoxication or drugged condition, he was compelled by his obligation to fully inform the jury of all legal issues, to give the appropriate instructions on each of these issues.

Defendant argues on appeal that the failure of his counsel to conduct the direct examination of his client in the customary question and answer form, when viewed in light of a deteriorating attorney-client relationship, constitutes a denial of effective assistance of counsel. In support of this position defendant claims that his credibility was seriously undermined when it appeared to the jury that defense counsel refused to associate himself with defendant or his testimony. It is suggested that the jury was impliedly informed that the witness they were watching was different from others and unworthy of belief since even his own attorney appeared unwilling to associate himself with the defendant or his testimony. We find defendant's arguments unpersuasive for two reasons.

The American Bar Association has promulgated a series of guidelines for administering criminal justice which are relevant to our discussion. Those standards are called The American Bar Association Standards for the Administration of Criminal Justice and provide:

> "Testimony by the defendant.
>
> (a) If the defendant has admitted to his lawyer facts which establish guilt and the lawyer's independent investigation establishes that the admissions are true but the defendant insists on his right to trial, the lawyer must advise his client against taking the stand to testify falsely.
>
> (b) If, before trial, the defendant insists that he will take the stand to testify falsely, the lawyer must withdraw from the case, if that is feasible, seeking leave of the court if necessary.
>
> (c) If withdrawal from the case is not feasible or is not permitted by the court, or if the situation arises during the trial and the

defendant insists upon testifying falsely in his own behalf, the lawyer may not lend his aid to the perjury. Before the defendant takes the stand in these circumstances, the lawyer should make a record of the fact that the defendant is taking the stand against the advice of counsel in some appropriate manner without revealing the fact to the court. The lawyer must confine his examination to identifying the witness as the defendant and permitting him to make his statement to the trier or the triers of the facts; the lawyer may not engage in direct examination of the defendant as a witness in the conventional manner and may not later argue the defendant's known false version of the facts to the jury as worthy of belief and he may not recite or rely upon the false testimony in his closing argument." ABA Standards Relating to the Defense Function §7.7 (1971).

We approve of this standard and its commentary and believe it is applicable to defense counsel's actions in this case. Defense counsel informed the court that his client wished to take the stand, in spite of his advice to the contrary, but did not reveal his reasons why he advised his client against testifying. According to the commentary to this standard, "the lawyer should not participate in a fraud on the court by conducting direct examination in the conventional manner or by referring in any way to his client's perjury in conducting the defense, but simply allow the accused to testify in narrative form and in his own words." The conduct of the defense counsel conforms to the letter and spirit of the preceding passage. We fail to understand how the actions of an attorney which closely parallels the recommendations of the American Bar Association Standards for the Administration of Criminal Justice, can establish incompetence sufficient to constitute a denial of defendant's right to effective representation.

On appeal defendant claims there is nothing in the record to indicate that defense counsel had anticipated his client would testify falsely. In support of his position he argues that the last paragraph of the commentary of section 7.7 suggests an adequate means for making a record and since defense counsel failed to follow those suggestions, there could be no apprehension on the part of defense counsel that his client would give perjured testimony.

It is suggested in the last paragraph of the commentary that defense counsel make a record by having defendant subscribe to a file notation, witnessed if possible, by another lawyer. As we interpret this language in context, it does not refer to making an official record for purposes of appeal, but rather a record to protect the attorney from subsequent unwarranted allegations of unethical practice or malpractice caused by advising his counsel not to testify. Indeed, even if such a procedure were

followed, as it may well have been in this case, there is no reason why it should appear in the official record on defendant's appeal and we perceive no reason from defendant's standpoint why his counsel should strive to have such a fact entered on the record.

From our foregoing discussion we do not intend to imply that defendant committed perjury or intended to do so. The procedure employed was appropriate if such had been the case, but by the nature of the problem the trial attorney is bound not to reveal such facts to the court or jury. It also can be said that where the trial attorney does not know what the defendant will say or where differing versions of prospective testimony have been offered, the attorney is in the same dilemma of reconciling his duties to the court and to his client.

Nor do we find upon this record the existence of any prejudice to defendant, prejudice which must exist before a defendant can claim denial of effective representation. (See *People v. Witherspoon*, 55 Ill. 2d 18, 302 N.E.2d 3.) We agree with defendant's suggestion that the failure to offer solid proof of prejudice should not be fatal to a claim of prejudice since it is often impossible to obtain such solid proof. Defendant argues prejudice has been established because of a great probability that the jury was adversely affected by counsel's conduct in examining his client. The difficulty with defendant's position is that the record fails to show any probability of prejudice to defendant because of his attorney's conduct. A narrative form of testimony with preliminary and concluding questions asked by the witness's attorney does not create prejudice to defendant. Indeed, defendant's testimony may well be more effective if done in narrative fashion. (See McCormick, Evidence 7 (2d ed. 1972).) Whatever prejudice results to defendant in the eyes of the jury occurs more from defendant's choosing to expose himself to the rigors of cross-examination than from the form in which the direct examination is conducted.

Defendant relies on *State v. Robinson* (1976), 290 N.C. 56, 224 S.E.2d 174, to support his claim of incompetence of counsel. Shortly after defendant's indictment in *Robinson*, defendant's court appointed counsel requested on behalf of defendant and himself that he be allowed to withdraw. Counsel requested permission to withdraw because defendant intended to call a witness which the attorney believed would give perjured testimony. The court denied the motion. Several times during trial, the defendant requested appointment of new counsel, but his requests were denied. At the close of the State's case, defendant himself indicated to the court he wished to call a witness. Counsel informed the court that on the basis of independent investigation and statements made to him by the prospective witness, he believed the witness would give perjured testimony. The court allowed the witness to be called for the defense. After the witness answered some preliminary questions and gave

a perfunctory account of the events surrounding the alleged robbery, the defendant himself took over direct examination of the witness while counsel remained seated. The Supreme Court of North Carolina found that defendant had been prejudiced by not having competent counsel and ordered a new trial. We believe one important fact distinguishes *Robinson* from the present. Here the defense counsel did undertake to question the witness, albeit in narrative form, and no one else assumed defense counsel's role as an advocate. In *Robinson*, however, defendant himself was forced to assume the burden of eliciting the major portion of the witness's testimony while his counsel sat by. Such a shifting of the advocatory function from attorney to client in the presence of the jury did not occur here and amply distinguishes *Robinson* from the present facts and circumstances.

Since defense counsel's conduct parallels the guidelines of the American Bar Association Standards for the Administration of Criminal Justice and no prejudice resulted to defendant as a result of his attorney's not conducting direct examination of defendant in the customary question and answer form, we hold that defendant was not denied effective assistance of counsel.

For the foregoing reasons the judgment of the circuit court of Will County is affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.