NUMBER 13-04-195-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

OSCAR MORENO A/K/A OSCAR ANGUIANO,                Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

                  On appeal from the 148th
District Court

                           of Nueces
County, Texas.

 

 

 

                     MEMORANDUM OPINION[1]

 

                Before Justices Yañez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








Appellant Oscar Moreno plead guilty to the charge of
aggravated robbery.[2]  The trial court imposed a life sentence at
the Texas Department of Criminal JusticeBInstitutional Division.  By one point of error, Moreno asserts that
the trial court abused its discretion in denying his motion for new trial.

I.  RELEVANT
FACTS








Moreno entered an open plea of guilty.  The State adduced evidence at the punishment
hearing.  Angela Garcia testified that,
on September 17, 2003, she was at work at a convenience store.  Moreno regularly patronized the store and knew
Garcia by her first name.  Moreno and two
other persons entered the store at approximately 12:30 a.m., looked around,
purchased some items, and left. 
Approximately one hour later Moreno returned.  Moreno called her over on the pretext that
water was on the floor.  She
complied.  He then cut her throat and
left the store.  Another witness
identified him as the man leaving the store immediately before Garcia emerged,
injured.  Garcia sustained an injury from
the middle part of her neck to the right back side of her neck. Documents
evidencing Moreno's judicial confession, prior criminal history, written
admonishments, and the pending motion to revoke felony community supervision
were admitted in evidence and are part of the record.  The trial court pronounced sentence on the
aggravated robbery offense in this case and, after revoking community
supervision, on the pending aggravated assault case.  The judgment in this case shows that the
trial court exercised its discretion and ordered the sentences to run concurrently.

Moreno filed a motion for new trial asserting
ineffective assistance of counsel on grounds that trial counsel (1) promised
him that, with an open plea, the trial court would not assess a life sentence,
and (2) did not allow him to testify.  The
trial court convened an evidentiary hearing. 


A.  Moreno's
Testimony

Moreno testified that trial counsel visited him in
jail twice during the approximate six-month period of representation.  During the initial visit, the two discussed
Moreno's version of the events, and trial counsel told him he was "looking
at a lot of time."  Moreno requested
discovery and did not receive it.  The
two did not discuss possible defenses. 
Prior to the April 7 hearing when Moreno pled guilty, they discussed
trial by bench or jury.  Moreno testified
that trial counsel told him to let the trial court sentence him.  Trial counsel did not advise him that he
could plead guilty and let the jury assess punishment.  The following colloquy ensued on direct
examination:

Q:  Whose recommendation
was it for you to plead guilty and let the Court assess punishment?

 

A:  Well, I
told the judge that I was guilty because [trial counsel] told me that I
wouldn't get a life sentence on it, and I believed him.

 

Q:  Why would
he tell you that you would not get a life sentence?

 

A:  I don't
know.  I believed him because I know that
he has been a lawyer for a while already.








 

Q:  Okay. 
Are you telling this Court that you pledByou
went into an open plea because [trial counsel] promised you that you would not
get a life sentence; is that correct?

 

A:  Yes, sir.

 

Moreno admitted he knew the range of
punishment for aggravated robbery.  He
stated that trial counsel asked him if he knew, and Moreno told him he already
knew.  Moreno told trial counsel he
wanted to testify and was told "no," without a reason.  Had he testified, Moreno would have given his
version of the events and apologized to the victim.  Moreno stated it was trial counsel's
decision, not his, that he not testify.

On cross-examination,
Moreno admitted he did not know why trial counsel would make a promise that a
life sentence would not be assessed. 
Moreno explained, "At first I didn't know why he was telling me
that, but then I believed him because I know that he's been a lawyer for a
while, . . . and that's why I" decided to "go with that."  If he had not relied on trial counsel, Moreno
would have "gone to a jury trial." The following ensued:

Q:  You don't think that slicing somebody's
throat for $5 and two cartons of cigarettes might have inflamed them enough to
give you a life sentence?

 

A:  You can't never tell with a jury.

 

Q:  Right. 
But you know they would have found you guilty, right?

 

A:  Oh, I know that, because I know I did it, you
know what I mean. . . 

 








Q:  And I bet I probably would have gotten in
information about your previous conviction, right? . . .  The jury would have found out that just a
couple of years ago you smashed somebody's face in with a brick, right?

 

A:  Yes, ma'am. . . . I don't think they would
have given me five years, but I don't think they would have given me a life
sentence either. . . . 

 

Q:  Okay. 
Do you have anything to base that on?

 

A:  No.

 

Moreno further testified that trial
counsel whispered to him the refusal to allow him to testify.  He probably would not have been sentenced to
life because he would have testified, "I know what I did was wrong, you
know what I mean.  I know I did it, you know
what I mean.  I never said I never did
it, you know what I mean."  Allowed
an additional opportunity to state what he would have testified to, Moreno
stated, "I don't know."  He
admitted that during the three times he appeared in court, he did not complain
to the trial court about trial counsel. 
He admitted that the outcome of the proceedings "probably"
would not have been different.  

B.  Trial Counsel's Testimony








The State called trial counsel to testify.  He testified that he represented Moreno on
both the aggravated robbery charge and the motion to revoke community
supervision pending at the time.  A
practicing attorney for twenty-five years with extensive jury and bench trial
experience, trial counsel testified he was "always prepared" to try
the case to a jury, and he informed Moreno he was prepared to try the
case.  Moreno declined and decided to
plead guilty.  He denied he promised
Moreno he would not receive a life sentence on his open plea.  His practice is to warn criminal defendants
that they are subject to the full range of punishment on an open plea.  He makes it clear that the trial court is
free to set any punishment.  He
testified, "I would not have ever made that sort of an assertion or
promise or anything like that to any defendant that I've ever
represented."  Trial counsel further
testified that he "had every possible discussion that needed to be had
with Mr. Moreno as to what his specific rights were as far as a trial by jury,
a trial by judge, subpoenaing witnesses, picking a jury, everything."  He explained the bifurcated system to
Moreno.  He testified that, had Moreno
told him he wanted to testify, trial counsel would have advised against it,
explaining that his practice is to advise against it, make a record of his
advice against the client's testifying (even in open plea proceedings), and
proceed according to his client's wish. 
But, he testified, Moreno did not state he wished to testify.  

On cross-examination, trial counsel testified he
advised Moreno that juries may be less sympathetic in a violent crime
case.  He denied telling Moreno the trial
court would probably assess a sentence less than life.  In this case, the trial court was aware of
Moreno's criminal history because of other cases and a motion to revoke pending
in the same court.  Trial counsel
testified he advised Moreno of the consequences of his testifying and
reiterated that he did not prevent Moreno from testifying.  Counsel testified that Moreno did not tell
him he wanted to testify.

II.  INEFFECTIVE
ASSISTANCE OF COUNSEL








Under Strickland v. Washington, a defendant
claiming ineffective assistance of counsel must demonstrate that (1) counsel's
conduct "fell below an objective standard of reasonableness,"[3]
and (2) this incompetence caused the defendant prejudice.[4]  Ex parte McFarland, 2005 Tex. Crim.
App. LEXIS 740, *12 (Tex. Crim. App. 2005)(citing Strickland v. Washington,
466 U.S. 668, 687-88 (1984)); Mallett v. State, 65 S.W.3d 59, 62‑63
(Tex. Crim. App. 2001); see Salinas v. State, 2005 Tex. Crim. App. LEXIS
741, *11‑*12 (Tex. Crim. App. 2005). 
Review of counsel's representation is highly deferential, and the
reviewing court indulges a strong presumption that counsel's conduct fell
within a wide range of reasonable representation.  Mallett, 65 S.W.3d at 63.  To overcome the presumption of reasonable
professional assistance, "any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness."  Thompson v. State, 9 S.W.3d 808, 813‑14
(Tex. Crim. App. 1999) (citing McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996)).

III.  STANDARD
OF REVIEWBMOTION FOR NEW TRIAL       








While the ultimate question of prejudice under Strickland
is to be reviewed de novo, the trial court should be afforded deference on any
underlying historical fact determinations.  Johnson v. State, 2005 Tex. Crim. App.
LEXIS 818, *42‑*43 (Tex. Crim. App. May 25, 2005).  When no express fact findings are made by the
trial court, as is the case with rulings on motions for new trial, appellate
courts should "impute implicit factual findings that support the trial judge's
ultimate ruling on that motion when such implicit factual findings are both
reasonable and supported in the record."  Id. 
The
trial court is granted wide latitude in exercising the decision to grant or
deny a motion for new trial, and in the absence of an abuse of discretion, an
appellate court should not reverse.  Lewis
v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  

IV.  DISCUSSION[5]

By his sole issue,
Moreno claims that he was denied the effective assistance of counsel on three
grounds.  He asserts trial counsel (1)
failed to timely communicate with him for trial preparation, (2) promised a
result that was not likely attainable, and (3) did not allow him to
testify.  

A.  Timely Communication








Moreno asserts that
trial counsel met with him two times in a six-month period and, thus, denied
him the opportunity to confer with counsel and develop strategy for trial.[6]  The sole testimony regarding the number of
times trial counsel and Moreno was Moreno's that they met twice at the jail.[7]  Moreno also testified that trial counsel gave
him the opportunity to relay his own version of the events, and he
complied.  Trial counsel testified that
he advised Moreno of all facets of a jury and non-jury trial, his assessment of
the severity of the case, and the range of punishment.  Trial counsel testified he was prepared to
try the case to a jury, but Moreno decided to plead guilty.  In denying the motion for new trial, the
trial court could have reasonably concluded that (1) because counsel was
trial-ready, Moreno preempted counsel's strategy by his decision to plead
guilty, and (2) with twenty-five years of trial experience, trial counsel's
meeting twice with his client was adequate in a case involving an eye-witness who
survived a violent attack.  On these
facts, we cannot conclude that the complained-of conduct is objectively
deficient.  The first prong of Strickland
is, thus, not met.

B.  Promise of an Unlikely Result








Moreno asserts that
trial counsel promised him that he would not receive a life sentence if
sentenced by the trial court.  Trial
counsel denied promising Moreno a sentence less than life; he denied any
promise as against his common practice. 
Implicit in the trial court's ruling is that it disbelieved Moreno and
believed trial counsel.[8]  Moreover, implicit in the trial court's
ruling is that, given the severity of the attack, aggravated by Moreno's
criminal history including a violent attack on another woman, any rational
trier of fact, including a jury, would have assessed a life sentence.  Thus, even assuming that Moreno met the first
Strickland prong, Moreno must prove by a preponderance of the evidence
that a promise, if any, or his reliance on the promise caused him
prejudice.  Moreno admitted to committing
the offense, admitted a jury would not assess five years, and speculated that a
jury would not assess a life sentence.[9]  We conclude that Moreno did not demonstrate
there is reasonable probability that, absent the complained of error, the
sentencer would have assessed punishment at less than life imprisonment.  Thus, the second prong of Strickland
is not met. 

C.  Denial of Right to Testify








The right to testify
is recognized as a "fundamental" constitutional right.  See Johnson, 2005 Tex. Crim. App.
LEXIS 818, at *34.  "Every criminal
defendant is privileged to testify in his own defense, or to refuse to do so."
 Id.; Salinas v. State,
2005 Tex. Crim. App. LEXIS 741, *11‑*12 (Tex. Crim. App. May 18, 2005)
(citing Harris v. New York, 401 U.S. 222, 225 (1971)); Maddox v.
State, 613 S.W.2d 275, 280 (Tex. Crim. App. 1980) (recognizing that
attorney has duty to protect client's right to testify).  Defense counsel shoulders the primary
responsibility to inform the defendant of his right to testify, including the
fact that the ultimate decision belongs to the defendant.  Johnson, 2005 Tex. Crim. App. LEXIS 818,
at *32.  Because imparting that
information is defense counsel's responsibility, Strickland provides the
appropriate framework for addressing an allegation that the defendant's right
to testify was denied by defense counsel. 
Id. 

Moreno testified that
trial counsel denied him the right to testify. 
If allowed to testify, he would have apologized to the victim and,
essentially, would have accepted responsibility for the offense.  When allowed an additional opportunity to
state what he would have testified to, he stated he did not know.  Trial counsel testified he provided Moreno,
essentially, his professional assessment of the consequences of Moreno's
testifying.  He  denied he prevented Moreno from exercising
his right to testify.   








By its ruling, aside
from credibility determinations, the trial court could have concluded that
Moreno's proffered testimony was duplicitous of evidence already before the
trial court.  Other than an apology to
the victim, Moreno did not articulate any other potential testimony.  Even assuming Moreno reasonably believed he
was denied the right to testify, a reasonably competent attorney might well
advise a client in Moreno's position not to testify for reasons not established
in the record.[10]  Moreno's proffered testimony was wholly
dependent on his credibility and was already before the trial court in court
documents admitted as exhibits.  A
reasonably competent attorney might have concluded that testimony of his
extraneous criminal conduct, certain to arise in cross-examination, would be
more prejudicial than helpful to Moreno. 
See Johnson, 2005 Tex. Crim. App. LEXIS 818 at *41.  We cannot conclude that trial counsel's
conduct fell below an objective standard of reasonableness.  Thus, the first prong of Strickland  is not met. 


V.  CONCLUSION

Viewing the evidence
as Strickland instructs, we conclude that the trial court did not abuse
its discretion in denying Moreno's motion for new trial on grounds he was
denied effective assistance of counsel.  Moreno did not establish by a preponderance of the
evidence that (1) his trial counsel's performance fell below an objective
standard of reasonableness or (2) caused him prejudice.  We overrule Moreno's sole issue.  We affirm the ruling of the trial court.   

 

 

 

ERRLINDA CASTILLO

Justice

 

Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and filed

this 7th day of July, 2005.

 











[1] See Tex.
R. App. P. 47.2 & 47.4.





[2] See Tex.
Pen. Code Ann. _ 29.03 (Vernon 2003).  The indictment alleged that Moreno
intentionally, knowingly or recklessly caused bodily injury to Garcia by
stabbing her with a deadly weapon, while in the course of committing theft of
property.  





[3] To prevail on these "ineffective
assistance" claims, the defendant must satisfy both prongs of the Strickland
test.  See Ex parte McFarland,
2005 Tex. Crim. App. LEXIS 740, *18‑*19 (Tex. Crim. App. May 18,
2005).  First, he must prove that his
counsel's conduct was objectively deficient. 
Id.  In assessing this, we
look to see if counsel was acting as "a reasonably competent
attorney" would under the circumstances. 
Id.  The defendant has the
burden of proof and must overcome a "strong presumption that counsel's
performance fell within the wide range of reasonable professional
assistance."  Id.  This highly deferential review is employed to
avoid "the distorting effect of hindsight."  Id. 
Thus, applicant must show that his attorneys made "errors so
serious that counsel was not functioning as the 'counsel' guaranteed the
defendant by the Sixth Amendment."  Id.





[4] He must demonstrate that
"there is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."  Ex parte McFarland, 2005 Tex. Crim. App.
LEXIS 740 at *18‑*19.  The Supreme
Court has defined this "reasonable probability" as a
"probability sufficient to undermine confidence in the outcome."  Id.





[5] We assume, without deciding, that
Moreno preserved error for appeal.  Tex. R. App. P. 33.1. 





[6] The statement of an issue or point
will be treated as covering every subsidiary question that is fairly
included.  Tex. R. App. P. 38.1(e). 






[7] We observe that Moreno admitted on
cross-examination that he appeared in court at least three times.





[8] The record shows that the trial
court revoked Moreno's community supervision for aggravated assault on a woman
by striking her head with a brick, and, coupled with the aggravated robbery in
this case involving another attack on another woman, the trial court could have
reasonably concluded that Moreno was merely dissatisfied with the
sentence.  In addition to the two
felonies before the trial court, documents admitted at the plea proceeding show
Moreno was previously convicted for deadly conduct, delivery of cocaine, and
possession of cocaine.  





[9] We will not base a finding of
ineffectiveness on speculation.  Gamble
v. State, 916 S.W.2d 92, 93 (Tex. App.BHouston [1st Dist.] 1996, no pet.).  





[10] At one point during his testimony,
trial counsel testified he would not disclose certain information because of
the attorney-client privilege.